108 F.3d 1134
 1997-1 Trade Cases P 71,742, 42 U.S.P.Q.2d 1097,
46 Fed. R. Evid. Serv. 797,
97 Cal. Daily Op. Serv. 1804,
97 Daily Journal D.A.R. 3368
 SOUTHLAND SOD FARMS; Pickseed West Inc., Plaintiffs-Appellants,
v.
STOVER SEED CO.; Warrens Turf Nursery, Defendants-Appellees.
Turf Merchants Inc.; Genesis Group; TMI Acquisition Inc.;
KWS Seeds, Inc.; Frederick B. Ledeboer,
Defendants-Cross-Defendants-Appellees.
 No. 94-56137.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1996.
Decided March 11, 1997.
 
 Louis P. Petrich, David Aronoff, Leopold, Petrich & Smith, Los Angeles, California; Robert L. Compton, Susan M. Seemiller, Nordman, Cormany, Hair & Compton, Oxnard, California, for plaintiffs-appellants Southland Sod Farms and Pickseed West Inc.
 Craig Donahue, Christian E. Sanne, Kevin M. McCormick, Thomas & Price, Glendale, California, for defendant-cross-defendant-appellee KWS Seeds, Inc.
 Leslie E. Criswell, David Berry, Hornberger & Criswell, Los Angeles, California, for defendant-appellee Stover Seed Company.
 Theresa M. Marchlewski, William E. Ireland, Tamara Equals Holmes, Haight, Brown & Bonesteel, Santa Monica, California, for defendants-appellees Turf Merchants, Inc. and The Genesis Group.
 Timothy J. Hughes, Heidi S. Hart, Daniels, Baratta & Fine, Los Angeles, California, for defendant-appellee TMI Acquisition, Inc.
 Appeal from the United States District Court for the Central District of California; James M. Ideman, District Judge, Presiding, D.C. No. CV-92-04894-JMI.
 Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, Jr., Circuit Judges.
 OPINION
 BRUNETTI, Circuit Judge:
 
 
 1
 Plaintiffs and Defendants are competing producers of turfgrass seed and sod. After Defendants ran advertisements claiming that their turfgrass was better than Plaintiffs' in certain key characteristics, Plaintiffs brought this lawsuit alleging false advertising under the Lanham Act and related state laws. The district court granted Defendants' motion for summary judgment, ruling that Plaintiffs had failed to raise a triable issue of fact on the key issues of falsity, causation, and damages. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse in part the district court's judgment.
 
 FACTS AND PROCEEDINGS BELOW
 I. The Parties and the Turfgrass Business
 
 2
 The parties to this dispute are competing producers of turfgrass seed and sod. Each of the parties produces and sells a "dwarf tall fescue" turfgrass under a separate brand name: Plaintiff-Appellant Southland Sod Farms produces and sells "Marathon IIe"; Plaintiff-Appellant Pickseed West, Inc. produces and sells "Shortstop"; and Defendants-Appellees Turf Merchants, Inc., The Genesis Group, TMI Acquisition, Inc., KWS Seeds, Inc., and Frederick B. Ledeboer produce and sell "Bonsai."
 
 II. The Allegedly Offending Advertisements
 
 3
 Plaintiffs allege that, beginning in 1990, Defendants distributed comparative advertisements claiming that Bonsai grows much slower (a desirable turfgrass characteristic because it results in less mowing and maintenance costs) than other dwarf tall fescues, including those produced by Plaintiffs. The allegedly offending advertisements consisted of three types: (1) "bar chart" advertisements graphically comparing clipping weights of several tall fescues, including Pickseed's Shortstop; (2) a "two-pot" advertisement, which contains a table and photograph comparing Bonsai and Southland's Marathon IIe and claiming that in an "independent comparison test" "Bonsai tested best" in "major turf characteristics"; and (3) a claim on Defendants' Bonsai seed containers and elsewhere that Bonsai requires "50% less mowing" based on "tests conducted by our research farm."III. Plaintiffs' Allegations of Falsity
 
 
 4
 Plaintiffs allege that Defendants' product superiority claims contained in their comparison advertisements are false. In fact, argue Plaintiffs, there are no significant differences between Bonsai, Marathon IIe, and Shortstop in the turfgrass characteristics emphasized by Defendants, including growth, density, and maintenance costs.
 
 
 5
 According to Plaintiffs, the tests upon which Defendants based their product-comparison advertisements were faulty because they were undertaken in the first spring following a fall planting. For some reason, juvenile Bonsai planted in the fall has unusually slow establishment as a seedling and starts spring growth in late March or early April, about a month later than other dwarf tall fescues. The test underlying the bar-chart advertisements, conducted by Frederick Ledeboer, was undertaken from March through May 1990 following a September 1989 planting date.[1] The test underlying the two-pot advertisement was conducted by Stan Spaulding from November 23, 1991 through April 2, 1992 on grass that had just been planted. Because both of these tests collected data only during those months during which Bonsai experienced its unique juvenile growth characteristics, neither could form a reliable basis for claims regarding the year-round growth characteristics of mature turfgrass. According to Plaintiffs, when they conducted their own comparison tests on mature turfgrass, they discovered that mature Bonsai does not have any of the advantages claimed by Defendants.
 
 IV. Procedural History
 
 6
 Plaintiffs commenced this action on August 14, 1992, alleging violations of § 43(a) of the Lanham Act, California Business & Professions Code §§ 17200 and 17500, and California common law. After the district court denied Plaintiffs' motion for a preliminary injunction, Defendants filed a motion for summary judgment. On April 5, 1994, the district court granted the motion as to all defendants, finding: (1) that the advertisements were not literally false as a matter of law; (2) that Plaintiffs failed to raise a genuine issue of fact as to whether the advertisements deceived consumers; (3) that Plaintiffs failed to raise a triable issue of fact as to causation and damages; and (4) that for the same reasons that Plaintiffs' Lanham Act claims failed, so did their state-law causes of action. On July 6, 1994, the district court denied Plaintiffs' motion for reconsideration.
 
 
 7
 Plaintiffs appeal from the district court's grant of summary judgment and denial of their motion for reconsideration.
 
 DISCUSSION
 I. Summary Judgment Standard
 
 8
 The district court's grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). This Court must determine whether the evidence, "viewed in the light most favorable to the non-moving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Id. "The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial." Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1131 (9th Cir.1994).II. Lanham Act Standards
 
 
 9
 The elements of a Lanham Act § 43(a)[2] false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce;[3] and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 244 (9th Cir.1990); accord ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 964 (D.C.Cir.1990). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943, 946 (3d Cir.1993) ("Castrol ").
 
 A. Literal Falsity
 
 10
 To prove that an advertisement claim based on product testing is literally false, "a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir.1991); Procter & Gamble Co. v. Chesebrough-Pond's, Inc., 747 F.2d 114, 119 (2d Cir.1984). "Rather, the plaintiff must demonstrate that such tests 'are not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." McNeil-P.C.C., 938 F.2d at 1549 (quoting Procter & Gamble, 747 F.2d at 119). A plaintiff may meet this burden either by attacking the validity of the defendant's tests directly or by showing that the defendant's tests are contradicted or unsupported by other scientific tests. Id.; see also Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62-63 (2d Cir.1992) ("Quaker State ") (distinguishing product superiority claim not based on testing, which must be proven false by affirmative evidence, from product superiority claim explicitly or implicitly based on tests or studies, which may be proven false by showing that the tests did not establish the proposition for which they were cited). Moreover, "[i]f the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden" of demonstrating literal falsity. Quaker State, 977 F.2d at 63.
 
 
 11
 When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context. Castrol, 987 F.2d at 946; American Home Products Corp. v. F.T.C., 695 F.2d 681, 687 (3d Cir.1982); see Cuisinarts, Inc. v. Robot-Coupe Int'l Corp., No. 81 CIV 731(CSH), 1982 WL 121559, * 2 (S.D.N.Y. June 9, 1982) ("[I]n determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other."). Thus courts have held that a claim can be literally false "by necessary implication." Castrol, 987 F.2d at 946; Tambrands, Inc. v. Warner-Lambert Co., 673 F.Supp. 1190, 1193-94 (S.D.N.Y.1987).
 
 B. Literally True But Misleading
 
 12
 Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public. Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228-29 (3d Cir.1990); American Home Products Corp. v. Johnson & Johnson, 577 F.2d 160, 165-66 (2d Cir.1978); U-Haul Int'l, Inc. v. Jartran, Inc., 522 F.Supp. 1238, 1248-49 (D.Ariz.1981) ("U-Haul I "), aff'd, 681 F.2d 1159 (9th Cir.1982) ("U-Haul II "). Reactions of the public are typically tested through the use of consumer surveys. E.g. American Home Products, 577 F.2d at 166-68; U-Haul I, 522 F.Supp. at 1249.
 
 
 13
 III. Admissibility of Plaintiffs' Expert Testimony
 
 
 14
 The bulk of Plaintiffs' evidence consists of declarations and deposition testimony from three expert witnesses: (1) M.C. Engelke, an expert in turfgrass breeding and development, whose testimony was proffered to demonstrate the unreliability of the Ledeboer and Spaulding tests and the falsity of Defendants' product superiority claims; (2) Ken Struman, a consumer survey expert whose testimony was proffered to demonstrate how Defendants' advertisements mislead the consuming public; and (3) Michael Wagner, an economics expert whose testimony was proffered to demonstrate the damage Defendants' advertisements caused to Southland's business.
 
 
 15
 In the district court, Defendants challenged the admissibility of these experts' testimony on relevancy grounds. On appeal, they raise additional challenges based on the reliability requirement enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591-99, 113 S.Ct. 2786, 2796-99, 125 L.Ed.2d 469 (1993) ("Daubert I ") (holding that a court analyzing the admissibility of scientific opinion testimony under Federal Rule of Evidence 702 must ensure that the testimony is based on scientifically valid principles and is relevant to the facts in issue). Before analyzing the merits of Defendants' summary judgment motion, we consider the admissibility of the three experts' testimony. We review the district court's decision to exclude testimony under an abuse of discretion standard. Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 897 (9th Cir.1993).
 
 A. M.C. Engelke
 
 16
 To demonstrate the unreliability of the Ledeboer and Spaulding tests and the falsity of Defendants' product superiority claims, Plaintiffs proffer the testimony of M.C. Engelke. Dr. Engelke, an Associate Professor of Turfgrass Breeding, Genetics, and Management in the Texas A & M University system, criticized the Ledeboer and Spaulding tests because they collected all of their data during the spring season following a fall planting. Therefore, according to Engelke, the data was an unreliable indicator of the turf's year-round growth characteristics. This was especially so for Bonsai because, as conceded by Ledeboer himself, juvenile Bonsai planted in the fall has unusually slow establishment as a seedling and starts spring growth about a month later than similar dwarf tall fescues.
 
 
 17
 Dr. Engelke also summarized and analyzed the results of six other comparison tests, conducted by Plaintiffs and others, which, according to Engelke, disprove Ledeboer's and Spaulding's tests and Defendants' superiority claims. With two exceptions (explained by factors other than growth rates), Dr. Engelke's statistical analysis determined, within a 95% confidence level, that there was no significant difference in clipping production between Bonsai, Shortstop, Marathon IIe, and some of the other varieties in Ledeboer's test.
 
 1. Relevance
 
 18
 The district court found Engelke's testimony to be irrelevant. Engelke's criticisms of the Ledeboer and Spaulding tests were irrelevant on the issue of falsity because both the bar-chart and the two-pot advertisements indicated the time period during which the data was collected. The district court found Engelke's summary and analysis of the six other tests irrelevant for two reasons:
 
 
 19
 First, the bar chart advertisement does not state on its face that it is based on a particular scientific test; therefore, the results of other tests are not material to the issue of the advertisement's alleged falsity. In addition, none of these other tests was performed in Aurora, Oregon and plaintiffs offer no supporting explanation of why the tests are nevertheless probative.[4]
 
 
 20
 Plaintiffs correctly contend that the exclusion of Engelke's testimony on relevance grounds amounted to an abuse of discretion.
 
 
 21
 Engelke's criticisms of the Ledeboer and Spaulding test were excluded because the district court found that the disclosures of testing dates in the bar-chart and two-pot advertisements rendered those advertisements not literally false as a matter of law. Because, as will be discussed in Part IV.A.1.a., infra, a reasonable jury could conclude that the advertisements' product superiority claims were intended to represent year-round growth (and that the accompanying test results were intended to support the claims) despite the disclosure, the district court's exclusion of this portion of Engelke's testimony was an abuse of discretion.
 
 
 22
 The exclusion of Engelke's testimony concerning the six other tests was also an abuse of discretion. The first rationale for exclusion--that "the bar chart advertisement does not state on its face that it is based on a particular scientific test"--is insufficient both as a factual and legal matter. A footnote in the bar chart clearly states that it is based upon "data compiled by KWS Research Farms." Moreover, there is no requirement that a contested advertisement must be based on a "particular test" before it can be challenged by conflicting test results.
 
 
 23
 Likewise, the second rationale--that none of the other tests were conducted in Aurora, Oregon--was also faulty. One of the tests was actually conducted within twelve miles of the Ledeboer site, during the same seasonal time period as Ledeboer's test.[5] More importantly, the issue for which Plaintiffs submitted Dr. Engelke's testimony was not whether Ledeboer obtained the results claimed by the bar chart, but whether Ledeboer's test was " 'sufficiently reliable to permit one to conclude with reasonable certainty that [it] established' " the claims of "less mowing," "reduced costs," "less clippings," and "slower growth." McNeil-P.C.C., 938 F.2d at 1549 (quoting Procter & Gamble, 747 F.2d at 119). By purporting to establish that there were no statistically significant differences in the growth or density of mature turfgrass studied over lengthy periods of time, Dr. Engelke's testimony is probative on this issue, despite the fact that the tests did not precisely replicate Ledeboer's test methods and location.
 
 2. Reliability
 
 24
 Defendants also argue that, even if Engelke's testimony is not properly excludable on relevancy grounds, it is properly excludable under Daubert I and Federal Rule of Evidence 702 because it is not based on scientifically valid principles. See Daubert I, 509 U.S. at 591-99, 113 S.Ct. at 2796-99; Daubert v. Merrell Dow Pharmaceuticals, 43 F.3d 1311, 1315 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995) ("Daubert II "). A proponent of scientific evidence may satisfy its burden of establishing that the evidence is scientifically valid by, inter alia, showing that the evidence grew out of pre-litigation research, showing that the research upon which the evidence is based has been subjected to normal scientific scrutiny through peer review and publication, or explaining precisely how the conclusions were reached and pointing to some objective source to show that the conclusions are based on "scientific method, as it is practiced by (at least) a recognized minority of scientists in the[ ] field." Daubert II, 43 F.3d at 1318-19.
 
 
 25
 Defendants contend that Dr. Engelke's testimony is scientifically unreliable as a matter of law because he did not personally do any of the work upon which his opinions are based, he did not submit any portion of his opinions for peer review, and the tests upon which his opinions are based were undertaken solely for the purpose of litigation. Because the district court did not exclude Engelke's testimony under the Daubert standard, we may do so "only if, as a matter of law, the proffered evidence would have to be excluded at trial." Daubert II, 43 F.3d at 1315. Defendants' contentions fail to establish as a matter of law that Dr. Engelke's testimony is inadmissible.
 
 
 26
 The fact that Engelke's opinions are based on data collected by others is immaterial; Federal Rule of Evidence 703 expressly allows such opinion testimony. Moreover, even if the tests were not conducted independently or subjected to peer review, these are only two of the ways Plaintiffs can demonstrate admissibility. Plaintiffs may also show that Engelke's testimony is based on "the scientific method, as it is practiced by (at least) a recognized minority of scientists in the[ ] field." Daubert II, 43 F.3d at 1319. Because Defendants have not demonstrated that Plaintiffs are unable to make such a showing as a matter of law, we will not exclude Engelke's testimony under Daubert.
 
 B. Ken Struman
 
 27
 Plaintiffs allege that, even if the bar-chart and two-pot advertisements are not literally false, they violate § 43(a) because they actually deceive the consuming public. In support of this allegation, Plaintiffs have submitted the declaration of Ken Struman, a marketing research expert who attempted to gauge consumer reactions to the advertisements through a multi-phased survey.
 
 
 28
 One phase of the survey was targeted at homeowners who had recently or would soon install a lawn. Another was targeted at landscape contractors. The targets were first shown copies of the advertisements and asked open-ended questions such as, "What would you say is the most important message in what you have just read?" They were also asked "closed-end," multiple choice questions. Based on the answers to the open-ended questions, Struman concluded that a solid majority of consumers interpreted the advertisements to mean that Bonsai saves time and requires less mowing. Based on the answers to the closed-end questions, Struman concluded that a majority of consumers interpreted the advertisement claims to be based on tests against other turfgrass products, and that the advertisements would influence the purchasing decisions of a majority of consumers.
 
 
 29
 The district court ruled that Struman's declaration was insufficient to withstand summary judgment on the issue of consumer deception for two reasons: First, it was not probative on whether consumers "inferred that the growth rates on the bar chart represent year-round growth."[6] Second, Struman's survey was "primarily directed to the lay public" despite the fact that the advertisements "were directed for the most part to a professional audience."
 
 
 30
 Assuming the district court's ruling was to exclude Struman's testimony on relevancy grounds,[7] it was an abuse of discretion. Although the district court correctly observed that the survey would have been more persuasive had it asked consumers whether they interpreted the tests to represent year-round growth, the survey was nevertheless probative on the ultimate question of whether consumers were materially deceived by the bar-chart and two-pot advertisements. Consumers surveyed concluded that tests proved Bonsai better in material characteristics. They could not have concluded this without inferring that the claims of product superiority were based on something more than the springtime characteristics of juvenile sod.
 
 
 31
 The district court's other reason for rejecting Struman's survey evidence is similarly faulty. Although a survey directed at landscape professionals is more probative than one directed at the lay public, Struman did conduct a significant survey aimed solely at landscape contractors. This survey, standing alone, is probative on the issue consumer deception.
 
 
 32
 On appeal, Defendants also argue that the survey evidence is inadmissible for the following reasons: (1) it was not designed to determine whether the advertisements influenced consumers' purchasing decisions; (2) it was limited to the Southern California market; and (3) the questions were leading. These arguments are unavailing.
 
 
 33
 First, the multiple choice question asking whether or not Bonsai is preferable to other turfgrass products is probative on whether the advertisements influenced consumers' purchasing decisions. Second, Defendants' other objections--that the survey was only conducted in Southern California and asked leading questions--go only to the weight, and not the admissibility, of the survey. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1292 (9th Cir.1992) ("Technical unreliability goes to the weight accorded a survey, not its admissibility." (quoting Prudential Ins. Co. v. Gibraltar Fin. Corp., 694 F.2d 1150, 1156 (9th Cir.1982).))[8]
 
 C. Michael Wagner
 
 34
 In order to prove that the offending advertisements caused it injury, Southland[9] submitted the testimony of its economics expert, Michael Wagner. By comparing and treating relative sales of non-dwarf tall fescues by Southland and Stover prior to the offending advertising as a yardstick, Wagner calculated the portion of Stover's post-advertising sales of dwarf fescue allocable to Defendant's allegedly false advertisements. Wagner then apportioned to Southland a percentage of Stover's increased Bonsai sales attributable to the advertisements based on Southland's share of the Southern California sod market. Based on this method, Wagner estimated that Southland suffered damages in the amount of approximately $1.7 million.
 
 
 35
 The district court disregarded Wagner's testimony, ruling that Plaintiffs failed to raise a triable issue as to either causation or damages. Contrary to Defendants' contentions, however, the district court did not rule Wagner's testimony inadmissible.
 
 
 36
 On appeal, Defendants argue that Wagner's model was unreliable because it did not consider what Bonsai sales would have been as a result of lawful competitive efforts; it assumed that Marathon II and Marathon IIe were equivalent to Bonsai; it assumed that the market for non-dwarf tall fescues would hold for dwarf tall fescues; and it did not account for the fact that the drought and recession in Southern California may have affected different producers differently. These asserted defects, however, go to the weight, and not the admissibility, of Wagner's testimony.
 
 
 37
 IV. Summary Judgment on Plaintiffs' Lanham Act § 43(a) False Advertising Claim
 
 
 38
 A. Were Defendants' Advertisements False?
 
 1. Bar Chart Advertisements
 
 39
 a. Literal falsity
 
 
 40
 The district court found, as a matter of law, that the bar chart advertisements were not literally false because they expressly stated that the bar chart represented a comparison of tall fescues accumulated from March through May 1990 at Aurora, Oregon. Because the advertisement never claimed to be a representation of year-round growth characteristics, reasoned the district court, Dr. Engelke's criticisms of the Ledeboer test, as well as the results of Plaintiffs' six other tests, were insufficient to withstand summary judgment.
 
 
 41
 We find the district court's conclusion as to literal falsity to be erroneous because it failed to consider Defendants' bar-chart advertisements in their full context. Cf. Castrol, 987 F.2d at 946. Although the bar chart does indicate that it is based on data accumulated during a limited time period at a particular location, there are several ways in which a jury could reasonably conclude that the bar chart advertisements, when read as a whole, contain literally false statements within the meaning of § 43(a).
 
 
 42
 First, a reasonable jury could conclude that the bar chart is in fact intended to represent year-round growth characteristics of mature turfgrass. Relevant in such a determination is the following statement, located directly above the bar chart: "PROOF THAT BONSAI DWARF GROWTH HABIT SAVES TIME AND MONEY." This claim would be nonsensical if the bar chart were only intended to represent the turf's growth characteristics during the spring months in the first year following germination. If the jury were to find that the bar chart is intended to represent year-round growth characteristics, Plaintiffs' evidence, as well as Ledeboer's own admissions regarding Bonsai's unique spring growth characteristics, provides adequate support for the conclusion that this representation is literally false.
 
 
 43
 Likewise, a jury could reasonably conclude that the bar chart provides implicit support for the claims of "less mowing," "reduced costs," "less clippings," and "slower growth," and that the advertisements are therefore false because the Ledeboer test underlying the bar chart is " 'not sufficiently reliable to permit one to conclude with reasonable certainty that [it] established' the claim made." McNeil-P.C.C., 938 F.2d at 1549 (quoting Procter & Gamble, 747 F.2d at 119).
 
 
 44
 Lastly, a jury could reasonably conclude that the claims of "less mowing," "reduced costs," "less clippings," and "slower growth," are false standing by themselves, without regard to the Ledeboer test. Contrary to the reasoning of the district court, Engelke's analysis of the six comparison tests provides adequate support for such a conclusion, despite the fact that they were not conducted in Aurora, Oregon.
 
 
 45
 b. Consumer deception
 
 
 46
 As mentioned in Part III.B., supra, the district court ruled that Struman's declaration was insufficient to withstand summary judgment on the issue of consumer deception for two reasons: First, it was not probative on whether consumers "inferred that the growth rates on the bar chart represent year-round growth." Second, Struman's survey was "primarily directed to the lay public" despite the fact that the advertisements "were directed for the most part to a professional audience." This ruling was erroneous.
 
 
 47
 "As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case." In re Apple Computer Securities Litigation, 886 F.2d 1109, 1116 (9th Cir.1989) (citing Bieghler v. Kleppe, 633 F.2d 531, 534 (9th Cir.1980)). Part III.B. discusses why Struman's testimony supports Plaintiffs' case on the issue of consumer deception. Neither the district court nor Defendants explain why this case falls outside the "general rule" enunciated in Apple Computer.
 
 2. Two-Pot Advertisement
 
 48
 a. Literal falsity
 
 
 49
 Plaintiffs contend that the two-pot advertisement, like the bar-chart advertisement, is literally false because the two-pot test does not support the claims made, and because the claims made are themselves false. The district court found that the two-pot advertisement was not literally false as a matter of law because the advertisement "clearly states in large white print against a dark background that the advertisement compares four-month-old pots of grass." However, as with the bar-chart advertisement, the district court failed to read the two-pot advertisement as a whole. Although the advertisement does contain the disclaimer identified by the district court, a reasonable jury could conclude that the two-pot test supports the unqualified product superiority claims made. Dr. Engelke's testimony raises a triable issue of fact concerning the falsity of the two-pot advertisement.
 
 
 50
 b. Consumer deception
 
 
 51
 For the same reasons discussed with respect to the bar-chart advertisement, a triable issue of fact exists as to whether consumers were materially deceived by the two-pot advertisement.
 
 
 52
 3. "Less is More" and "50% Less Mowing" Advertisement Claims
 
 
 53
 Plaintiffs contend that Defendants' "Less is More" and "50% Less Mowing" advertisement claims, when read in context, are literally false. The district court granted summary judgment for Defendants, holding that the "Less is More" claim is nonactionable puffery because it "constitutes a general assertion of superiority rather than factual misrepresentation" and the "50% Less Mowing" claim is puffery because it "does not compare Bonsai to any specific competitor by name nor does it explain any basis for the claim."
 
 
 54
 " 'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04[d] at 27-52 (3d ed.1994). While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, Cook, Perkiss and Liehe, 911 F.2d at 246, "misdescriptions of specific or absolute characteristics of a product are actionable." Id. (citation omitted). A specific and measurable advertisement claim of product superiority based on product testing is not puffery. See Castrol, 987 F.2d at 946; see also W.L. Gore & Assocs., Inc. v. Totes Inc., 788 F.Supp. 800, 809 (D.Del.1992) (numerical comparison that product is seven times more breathable "gives the impression that the claim is based upon independent testing" and "is not a claim of general superiority or mere puffing").
 
 
 55
 The district court was correct in concluding that Defendants' "Less is More" claim is nonactionable puffery. It is precisely the type of generalized boasting upon which no reasonable buyer would rely. The "50% Less Mowing Claim," on the other hand, is a specific and measurable advertisement claim of product superiority based on product testing and, as such, is not puffery. Castrol, 987 F.2d at 946. While the district court found it to be puffery because it does not compare Bonsai to any specific competitor by name, "there need not be a direct comparison to a competitor for a statement to be actionable under the Lanham Act." Id. Moreover, while the district court found that the claim was puffery because the advertisement "does not explain any basis for the claim," the advertisement actually makes the claim based on "[t]ests conducted by our research farm." Summary judgment was erroneously granted on the "50% Less Mowing" claim.
 
 
 56
 B. Were Plaintiffs Injured?
 
 
 57
 A plaintiff who successfully establishes a violation of § 43(a) is entitled to recover, "subject to the principles of equity, ... (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (Lanham Act § 35(a)). In addition to finding that Plaintiffs had failed to demonstrate falsity as a matter of law, the district court ruled that Defendants were entitled to summary judgment because Plaintiffs had failed to present sufficient evidence upon which a reasonable factfinder could conclude that Plaintiffs were injured as a result of Defendants' advertising. This ruling was erroneous.
 
 
 58
 First of all, "a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir.1989). Thus, even if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction. Moreover, although the Ninth Circuit in Harper House stated that "actual evidence of some injury resulting from the deception is an essential element" in a suit for damages under § 43(a), id. (emphasis omitted), a more recent decision holds that "an inability to show actual damages does not alone preclude a recovery under section 1117." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir.1993) (quoting Bandag, Inc. v. Bolser's Tire Stores, 750 F.2d 903, 919 (Fed.Cir.1984)). Under Lindy Pen, the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances. Id.; see also Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1157 (7th Cir.1994) (stating that, even if a plaintiff is unable to demonstrate damages resulting from the defendant's § 43(a) violation, § 1117 allows the district court to award the plaintiff any just monetary award so long as it constitutes "compensation" for the plaintiff's losses or the defendant's unjust enrichment and is not simply a "penalty" for the defendant's conduct).
 
 
 59
 Additionally, when, as in this case, a § 43(a) claim involves false advertising rather than "palming off," courts have been more willing to allow monetary damages even without a showing of actual consumer confusion. See, e.g., PPX Enterprises v. Audiofidelity Enterprises, 818 F.2d 266, 272-73 (2d Cir.1987) (stating that "the distinction drawn between stating a claim for injunctive relief and establishing entitlement to damages has less relevance in the context of false advertising" and holding that if an advertising statement is actually false, monetary relief can be awarded even without reference to consumer confusion). In fact, for false comparative advertising claims, this circuit has held that "[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance." U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040-41 (9th Cir.1986) ("U-Haul IV ") (quoting U-Haul Int'l, Inc. v. Jartran, Inc., 601 F.Supp. 1140, 1149 (D.Ariz.1984) ("U-Haul III ")). The U-Haul IV court reasoned:
 
 
 60
 The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded.
 
 
 61
 U-Haul IV, 793 F.2d at 1041. Because a reasonable jury could conclude, based on the evidence submitted by Plaintiffs, that Defendants comparative advertisement claims were deliberately false within the meaning of § 43(a), Plaintiffs may be entitled to a presumption of actual consumer deception and reliance, and would therefore be entitled to appropriate monetary relief unless Defendants could rebut the presumption.
 
 
 62
 Even if Plaintiffs were not entitled to a presumption of actual consumer deception and reliance, the consumer survey testimony of Struman and the market analysis testimony of Wagner provides adequate evidence for a reasonable jury to conclude that Plaintiffs suffered actual injury as a result of Defendants' advertisements. See, e.g., Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 525 (10th Cir.1987) (stating that actual consumer confusion entitling a plaintiff to monetary damages may be demonstrated through consumer surveys); U-Haul III, 601 F.Supp. at 1148-49 (basing damage award on market analysis).
 
 
 63
 The district court's grant of summary judgment on the issues of causation and injury was erroneous.
 
 V. State-Law Claims
 
 64
 The district court granted summary judgment on all of Plaintiffs' state-law claims based on its finding that Defendants' advertisements were not false as a matter of law. Because a triable issue of fact exists as to whether Defendants' advertisements were false, the district court's reason for granting summary judgment on the state-law claims was erroneous. On appeal, Defendants raise several alternative bases for affirming the district court's ruling with respect to Plaintiffs' state law claims.
 
 A. California Business & Professions Code
 
 65
 Defendants TMI & Genesis argue that summary judgment should be granted on Plaintiffs' Business & Professions Code claims because Plaintiffs, Southern California sod sellers, and Defendants, Oregon seed wholesalers, are not "competitors" as required by the code. Defendants provide no legal authority for such a contention. Even if they could provide legal support, they have not demonstrated the absence of a triable issue of fact as to whether Plaintiffs and Defendants are competitors.
 
 B. Common-Law Unfair Competition
 
 66
 "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." Bank of the West v. Superior Court, 2 Cal.4th 1254, 1263, 10 Cal.Rptr.2d 538, 544, 833 P.2d 545, 551 (1992). Because Plaintiffs' allegations do not amount to "passing off" or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed.
 
 
 67
 C. Intentional Interference With Prospective Economic Advantage
 
 
 68
 Defendants TMI and Genesis argue that summary judgment on Plaintiffs' intentional interference with prospective economic advantage claim was appropriately granted because Plaintiffs failed to demonstrate that Defendants' interference was wrongful or that Plaintiffs suffered injury as a result of Defendants' conduct. These are essentially the same arguments made against Plaintiffs' Lanham Act claim; they are without merit.
 
 VI. Defendants' Respective Culpability
 
 69
 As alternative grounds for affirmance, KWS Seeds argues that it is not culpable for the allegedly offending advertisements. We agree that the uncontroverted evidence in the record demonstrates that neither KWS seeds nor Frederick Ledeboer were responsible for disseminating the offending advertisements. Accordingly, we affirm the district court's grant of summary judgment with respect to these two defendants. While the other defendants also make various arguments as to why they are not culpable for certain of the offending advertisements, we leave these arguments for the district court to consider on remand.
 
 CONCLUSION
 
 70
 We affirm the district court's grant of summary judgment in favor of KWS Seeds, Inc. and Frederick B. Ledeboer and in favor of all other defendants with respect to Defendants' "Less is More" claim and Plaintiffs' cause of action for unfair competition. In all other respects, the judgment of the district court is reversed and the case remanded for further proceedings. No costs will be awarded in this appeal.
 
 
 71
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 [1]
 There is a dispute about when Ledeboer conducted his test and whether the grass upon which the test was conducted was six or eighteen months old. In his November 1992 deposition, Ledeboer originally testified that he conducted the test between March and May 1989 on turf he had planted in 1987. However, in a September 1993 deposition, when confronted with the fact that he could not have planted the test plots in 1987 because he did not receive any Shortstop seed until August 1989, Ledeboer testified that he actually conducted the test between March and May 1990 on turf he had planted in September 1989. He confessed that the data sheets dated 1989 were actually prepared by him in 1992 after Plaintiffs had subpoenaed his records. According to Plaintiffs, this contradictory testimony indicates either that Ledeboer never conducted any test at all, or that he was trying to make it appear as though his test was conducted on mature turf while in fact it was deliberately staged to capitalize on Bonsai's unique juvenile growth characteristics
 
 
 [2]
 Lanham Act § 43(a), codified at 15 U.S.C. § 1125(a), provides in pertinent part:
 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... false or misleading representation of fact, which--
 (A) ...
 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 15 U.S.C. § 1125(a) (1988).
 
 
 [3]
 Prior to the 1988 amendments to § 43(a), Pub.L. No. 100-667 § 132, 102 Stat. 3935, 3946, the interstate commerce requirement was associated with the defendant's falsely advertised goods or services. After the 1988 amendments, it is the statement itself, rather than the falsely advertised goods or services, that must be used in interstate commerce. Compare 15 U.S.C. § 1125 (1982) with 15 U.S.C. § 1125 (1988)
 
 
 [4]
 Only the Ledeboer test was conducted in Aurora, Oregon. The district court did not indicate why Engelke's analysis of the other tests was irrelevant with respect to Spaulding's two-pot test
 
 
 [5]
 Location (particularly latitude) and season are significant variables because they determine the length of the days during which the data is collected. Day length, or "photoperiod," has a significant impact on turf growth characteristics
 
 
 [6]
 The district court did not comment on Struman's conclusions with respect to the two-pot advertisement. However, the court's criticisms with respect to the bar-chart advertisement apply equally with respect to the two-pot advertisement
 
 
 [7]
 To the extent the district court's ruling was that, although admissible, the Struman survey was insufficient to withstand summary judgment, it will be addressed in Part IV.A.1.b. infra
 
 
 [8]
 Defendants TMI and Genesis argue that under Daubert, objections to the technical reliability of a survey do go to its admissibility. Defendants are correct that Daubert 's holding applies to all expert testimony, not just testimony based on novel scientific methods. Daubert I, 509 U.S. at 593 n. 11, 113 S.Ct. at 2796 n. 11; Claar v. Burlington Northern R. Co., 29 F.3d 499, 501 n. 2 (9th Cir.1994). However, "as long as they are conducted according to accepted principles," Gallo Winery, 967 F.2d at 1292, survey evidence should ordinarily be found sufficiently reliable under Daubert. Unlike novel scientific theories, a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value. Defendants have not demonstrated that the survey was not conducted according to accepted principles. See, e.g., Consumers Union of United States, Inc. v. New Regina Corp., 664 F.Supp. 753, 769-70 & n. 20 (S.D.N.Y.1987) (approving the use of closed-ended rotating questions similar to those designed by Struman)
 
 
 [9]
 Because its request for compensatory damages is limited to the costs of conducting research to disprove Defendants' advertising claims, Pickseed's damage claim is not part of Wagner's analysis