**PANATRONIC USA, a California general partnership; Lemar Textile Co., Plaintiffs–Appellants,**

v.

**AT&T CORPORATION, Defendant–Appellee.**

**No. 01–15470.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2002.

Filed April 22, 2002.

Irving Bizar, New York, NY, for the appellants.

Christopher B. Hockett, San Francisco, CA, for the appellee.

Before THOMPSON, W. FLETCHER and BERZON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

We must determine whether AT&T's temporary failure to assess a Universal Connectivity Charge ("UCC") on certain customers, while assessing it on others, violated the Federal Communications Act. Panatronic USA and Lemar Textile Co. are AT&T long distance subscribers who were assessed the UCC fee. AT&T delayed assessing the fee on some of its larger customers for several months. According to the plaintiffs, this several-month delay constituted unlawful price discrimination under 47 U.S.C. § 202(a). The plaintiffs additionally contend that AT&T's temporary failure to impose the UCC fee on its larger customers contradicted the terms of its published tariffs, in violation of 47 U.S.C. § 203(c).

Panatronic and Lemar sought class certification to pursue the claims on behalf of business subscribers who were assessed the UCC fee during the period January 1, 1998 through December 31, 1998. Without

ruling on class certification, the district court granted AT&T's motion for summary judgment and denied the plaintiffs' motion to re-open discovery.

The district court had subject-matter jurisdiction under 47 U.S.C. § 207. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

■ Pursuant to the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*, the Federal Communications Commission ("FCC") regulates charges for interstate telephone calls through a tariff system. Under this system, every long distance carrier is required to file a tariff with the FCC listing its schedule of charges and the terms and conditions of each class of service. 47 U.S.C. § 203. Once a tariff is approved by the FCC, it carries the force of law and is binding on both the carrier and the subscriber. *Brown v. MCI World-Com Network Services Inc.*, 277 F.3d 1166, 1170 (9th Cir.2002).

AT&T has 15 general tariffs (numbered 1, 2, 4, 5, 7–14, 16, 27, and 28) as well as thousands of contract tariffs, which are individually-negotiated service contracts. Panatronic subscribed to AT&T's True Reach Service under Tariff 27, which is a basic long-distance service for residential customers. Lemar subscribed to AT&T's CustomNet Service under Tariff 1, which is a basic long-distance service for business customers.

AT&T also offers a package called the Virtual Telephone Network Services ("VTNS") under Tariff 12, which is a sophisticated voice and data network requiring multi-year, multi-million dollar usage commitments. The networks include incoming toll free services, outbound calling services, and private dedicated lines that directly connect the customer's multiple business locations. Neither Lemar nor Panatronic subscribed to the VTNS service.

■ In 1996, Congress enacted legislation requiring long distance carriers to contribute to the Universal Service Fund, which subsidizes the cost of telecommunication services for schools, libraries, health care providers and low income consumers. 47 U.S.C. § 254(d), (h). The FCC assesses carriers a quarterly Universal Service Contribution based on the carriers' telecommunications revenue. Carriers are authorized, but not required, to attempt to recoup this assessment from their customers. *See In The Matter of Federal–State Joint Board on Universal Service*, 12 F.C.C.R. 8776, 1997 WL 236383 § 829 (May 8, 1997); *Evanns v. AT & T Corp.*, 229 F.3d 837, 839 (9th Cir.2000), *cert. denied*, 533 U.S. 911, 121 S.Ct. 2262, 150 L.Ed.2d 247 (2001). Pursuant to this authority, AT&T assesses its customers a Universal Connectivity Charge ("UCC") in order to recover its costs for the Universal Service Fund.

The plaintiffs' central allegation here is that AT&T assessed the UCC fee in a discriminatory manner. Tariff 1 customers, such as Lemar, were assessed a 4.9% UCC fee. Tariff 27 customers, such as Panatronic, were assessed a flat UCC fee of $0.93 per month. By contrast, Tariff 12 or VTNS customers were not assessed any UCC fee for several months. Significantly, the plaintiffs have not claimed that VTNS customers escaped the fee entirely, nor do they complain about the amount of the assessment. Quite simply, the plaintiffs complain that there was a delay of several months in assessing the fee upon VTNS subscribers and that this delay constituted unlawful price discrimination.

■ We review de novo the district court's grant of summary judgment. *Delta Sav. Bank v. United States*, 265 F.3d

1017, 1021 (9th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002). We are governed by the same standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Id.* Thus, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## II

At the outset, we conclude Panatronic is no longer a party in this litigation. The district court determined that Panatronic lacked standing because, as a residential customer, it was not part of the business class on behalf of which the action was brought. Panatronic has not challenged that decision on appeal. Accordingly, the only remaining plaintiff in the case is Lemar. *See Paciulan v. George*, 229 F.3d 1226, 1230 (9th Cir.2000) (an issue not raised in party's opening brief is waived).

## III

Lemar asserts that AT&T's differential assessment of the UCC fee discriminated in favor of its VTNS customers, in violation of 47 U.S.C. § 202(a). This section reads:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class

> of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202(a).

■ Courts have fashioned a three-step analysis to determine whether a carrier has violated this section. The first inquiry is whether the services are "like"; if they are, the next inquiry is whether there is a price difference between them; and if so, the third inquiry is whether the difference is reasonable. *Nat'l Communications Ass'n, Inc. v. AT & T Corp.*, 238 F.3d 124, 127 (2d Cir.2001); *American Message Ctr. v. FCC*, 50 F.3d 35, 40 (D.C.Cir.1995); *Competitive Telecomm. v. FCC*, 998 F.2d 1058, 1061 (D.C.Cir.1993); *MCI Telecomm. v. FCC*, 917 F.2d 30, 39 (D.C.Cir. 1990). The burden is on the plaintiff to establish the first two elements. If the plaintiff makes this showing, the burden shifts to the carrier to justify the price disparity as reasonable. *Nat'l Communications Ass'n*, 238 F.3d at 129–133; *MCI Telecomm.*, 917 F.2d at 39.

AT&T contends, and the district court determined, that the plaintiffs failed to satisfy the first element because the services are not "like" each other. More precisely, AT&T argues that its VTNS service is "unlike" its CustomNet Service to which Lemar subscribed, and that the price discrimination claim, therefore, is barred as a matter of law. We decline to decide the issue of likeness, because it is clear to us that any temporary price discrepancy was not unreasonable. In this analysis, we assume, without deciding, that there was a "price difference."

■ A difference in price is not unreasonable if there is a " 'neutral, rational basis underlying [the disparity].' " *MCI Telecomm.*, 917 F.2d at 41 (quoting *National Ass'n of Reg. Util. Comm'rs v. FCC*, 737 F.2d 1095, 1133 (D.C.Cir.1984)). Here, AT&T asserted that it believed it could not impose the UCC fee on its VTNS

customers until it negotiated new service contracts, because the VTNS contracts precluded AT&T from unilaterally making any material changes that would adversely affect its VTNS customers. Consequently, AT&T's several-month delay in imposing the UCC fee on VTNS customers was caused by its perceived need to negotiate new contracts, file amended tariffs, and change its billing system.

Lemar contends that the various contract and tariff provisions did not preclude AT&T from imposing the UCC fee as a regulatory pass-through charge. Lemar also argues that, even if AT&T was barred from imposing the UCC fee upon VTNS subscribers under its existing tariffs and contracts, AT&T failed to immediately assess such charges upon entering into *new* contracts and filing *amended* tariffs. Lemar points to two VTNS subscribers whose contracts were apparently renewed in February 1998, yet were not assessed a UCC fee until May 1998, "thereby escaping UCC assessment for the months of February, March and April." Lemar further cites thirty-three VTNS subscribers whose contracts expired between February and June 1998, yet who were not assessed UCC charges until August 1998.

We are not persuaded by Lemar's arguments. Whether the VTNS contracts allowed AT&T to unilaterally impose the UCC charge is, at best, a debatable legal question. AT&T decided that, in view of the contractual provisions, it would not attempt to impose the UCC fee unilaterally upon its VTNS customers. There was nothing unreasonable about that. We recognize that AT&T failed to immediately impose the UCC fee even *after* it negotiated new VTNS contracts. It took some additional months for the charges to show up on the billing statements of the VTNS customers, because of the complexity of these multi-million dollar contracts. But we do not find that delay unreasonable.

We conclude that AT&T offered "neutral, rational reason[s]" for its several-month delay in billing its VTNS customers for the UCC charges. There is no genuine issue of material fact in dispute as to that issue. Accordingly, summary judgment in favor of AT&T on Lemar's § 202(a) claim was appropriate.

### IV

Lemar next contends that AT & T violated 47 U.S.C. § 203(c) by the several-month delay in imposing the UCC fee on its VTNS customers after it negotiated new contracts and filed amended tariffs. Section 203(c) prohibits a carrier from charging a customer an amount different from the filed tariff rate. It provides in pertinent part:

> no carrier shall ... charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such [tariff] schedule than the charges specified in the schedule then in effect....

47 U.S.C. § 203(c).

We construe § 203(c) as conferring a cause of action on customers covered by the tariff at issue, but not on customers covered by other tariffs. Because Lemar was not a customer covered by the VTNS tariff, it suffered no injury under section 203(c) by AT&T's delay in imposing the UCC fee on its VTNS customers. Therefore, Lemar lacks standing to invoke the independent protection of this section. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

### V

The district court denied the plaintiffs' request to reopen discovery to conduct additional discovery to defend against

AT&T's motion for summary judgment. Lemar challenges that ruling.

 We review for abuse of discretion a district court's denial of a request to reopen discovery. *Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir.2001). A district court abuses its discretion only if " 'the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment.' " *Id.* (quoting *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998)). The additional evidence that the plaintiffs sought would not have precluded summary judgment. That evidence would not rebut AT&T's showing that its delay in assessing the UCC fee on its VTNS customers was not unreasonable. Moreover, Lemar had ample opportunity to conduct discovery. We conclude the district court did not abuse its discretion by refusing to re-open discovery.

AFFIRMED.