**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| HELEN JANE ROMERO, as Special Administrator of the Estate of Anthony Gilbert Beltran, deceased; ANTHONY G. BELTRAN, Jr., a minor child, as heir to Anthony Gilbert Beltran; BRITNIE NICOLE BELTRAN, a minor child, as heir to Anthony Gilbert Beltran; CHRISTIAN LEO CLIFFORD BELTRAN, a minor child, as heir to Anthony Gilbert Beltran,<br><br>        Plaintiffs-Appellants,<br><br> v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, a political subdivision of the State of Nevada; E. K. MCDANIEL, individually and in his official capacity; GLEN WHORTON, Individually and in his official capacity; TRENT HOWES, individually and in his official capacity; JASON STOLK, individually and in his official capacity; THERESA LANDON, individually and in his official capacity; OTERO, OFC, individually and in his official capacity; DRAIN, "Caseworker", individually and in his official capacity; R. | No.    14-17204<br><br>D.C. No. 2:08-cv-00808-JAD-VCF<br><br><br>MEMORANDUM[*] |

---

        [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

CANDLISS, "Counselor", individually and in his official capacity; DOES, I-X, inclusive; ROES, I-X, inclusive,

Defendants-Appellees.

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted October 19, 2016
San Francisco, California

Before: THOMAS, Chief Judge, and BEA and IKUTA, Circuit Judges.

On December 28, 2006, Anthony Beltran, an inmate at Ely State Prison in Nevada, was fatally stabbed by his cellmate, Douglas Potter. Beltran's mother, Helen Romero, brought this lawsuit against Nevada, the Nevada Department of Corrections ("NDOC"), and various NDOC employees (collectively, the "Defendants"), alleging that they failed to protect Beltran from Potter. Romero asserted violations of Beltran's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983, as well as state-law claims for wrongful death, negligent supervision, and vicarious liability. She also asserted these claims on behalf of Beltran's minor children.

After years of litigation delays, the district court granted the Defendants' motion for summary judgment as to Romero's § 1983 claims, and remanded the

remaining state-law claims to state court. Romero appeals only the district court's grant of summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

Romero first argues that the district court abused its discretion by refusing to consider her evidence on summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) (evidentiary rulings are reviewed for abuse of discretion). At the hearing on the Defendants' summary judgment motion, the district court repeatedly pointed out that much of Romero's documentary evidence was unauthenticated. Despite these warnings, Romero did not attempt to authenticate her evidence during the two-month period between the hearing and the date of the district court's order.

On appeal, Romero argues only that the district court's evidentiary ruling was an abuse of discretion because it was made *sua sponte*. We find this argument unpersuasive. *See* Fed. R. Civ. P. 56(f)(2) (explicitly providing that a district court may grant summary judgment *sua sponte* after giving the losing party "notice and a reasonable time to respond"). Although Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated, the amended Rule still requires that such evidence "would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(4). Romero does not argue that

3

she would have been able to proffer her evidence in admissible form at trial. Nor does she argue that her evidence was authenticated because it was produced by the Defendants in discovery. These arguments are therefore waived, and we need not consider whether they would sustain Romero's challenge to the district court's evidentiary rulings. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (arguments not made before the district court or in the appellant's opening brief are waived).

## II.

Even if the district court did err by refusing to consider Romero's evidence submitted in opposition to the Defendants' motion for summary judgment, that error was harmless, because Romero's evidence did not raise a genuine issue of material fact as to the liability of any *Defendant* for Beltran's death. *Orr*, 285 F.3d at 773 ("[We] must affirm the district court unless its evidentiary ruling was manifestly erroneous *and* prejudicial."). Indeed, the Defendants' answers to Romero's interrogatories and some of Romero's documentary evidence suggest that *other* NDOC employees may have been responsible for assigning Beltran to live with Potter, and that these employees may have known that the assignment placed Beltran at an increased risk of harm. Despite the fact that Romero knew the identity of these individuals as early as August 2009, none of them were named as defendants in this

4

action in the time between August 2009 and the hearing on the Defendants' motion for summary judgment in October 2013.

A.

None of Romero's evidence raises a genuine issue of material fact that either Glen Whorton, the director of NDOC, or E.K. McDaniel, the warden of Ely State Prison, were "deliberately indifferent" to Beltran's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Nothing in the record tends to prove that either of these two Defendants was involved with the decision to house Beltran with Potter. Romero argues that these Defendants were responsible for implementing flawed policies that led to Beltran's death, but she has failed to demonstrate that any challenged policy was "so deficient that the policy itself [was] a repudiation of constitutional rights." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Thus, the district court's grant of summary judgment as to Romero's claims against Director Whorton and Warden McDaniel was not error.

B.

Nor does Romero's evidence raise a genuine issue of material fact that any of the correctional officers sued in this action—Officers Trent Howes, Jason Stolk, Robert Otero, and Theresa Landon—were "deliberately indifferent" to Beltran's safety. Again, none of Romero's evidence tends to prove that any of these Defendants

were involved with the decision to house Beltran with Potter. Indeed, Romero has failed to adduce any evidence that Officers Stolk or Otero were involved in the events leading up to Beltran's death. Officer Landon was one of the correctional officers who responded to the stabbing after it occurred, but Romero does not explain how Officer Landon's conduct was "deliberately indifferent" to Beltran's health or safety.

Romero has also failed to adduce evidence demonstrating that Officer Howes, who handcuffed Beltran immediately prior to his being stabbed by Potter, was "deliberately indifferent" to Beltran's safety. Nothing in the record suggests that Officer Howes was aware of Potter's intention to attack Beltran, or even that Potter was likely to do so. Moreover, even if it were a constitutional violation for Officer Howes to handcuff Beltran in his cell while leaving Potter unrestrained, as Romero argues, this fact was not "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 224 (2009). Officer Howes is therefore entitled to qualified immunity, and the district court's grant of summary judgment in his favor was not error.

## C.

Romero has also failed to demonstrate that Michael Drain and Robert Chambliss, two NDOC caseworkers, were "deliberately indifferent" to Beltran's safety. Romero proffered three notes that Potter sent to Drain and Chambliss in 2005,

in which Potter told the caseworkers that he did not want a cellmate and that if they placed one with him, he would assault that inmate. This, Romero argues, should have put Chambliss and Drain on notice that housing Beltran with Potter would be dangerous to Beltran.

But nothing in the record suggests that either caseworker was involved in the decision to house Beltran with Potter. In any case, the notes were sent a full year before Potter attacked Beltran, and in the interim, Potter had lived with two other cellmates without incident. Romero therefore failed to raise a genuine issue of material fact as to Drain's and Chambliss's "deliberate indifference" to Beltran's safety, and the district court's grant of summary judgment in favor of Chambliss and Drain was not error.

## D.

Romero has also failed to adduce evidence that any of the Defendants were deliberately indifferent to Beltran's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Romero does not dispute that a medical team was on the scene within minutes of the attack, nor does she explain how a speedier medical response would have increased Beltran's chances of survival. The district court's grant of summary judgment on this claim was therefore not error.

## E.

7

Romero also challenges the district court's decision to dismiss the § 1983 claims she brought on behalf of Beltran's minor children. Section 1983 adopts as its law of survivorship the law of the forum state, *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978), which here is Nevada. Under Nevada law, only the "executor or administrator" of the deceased's estate can sue on the deceased's behalf. Nev. Rev. Stat. § 41.100(3). Romero has adduced no evidence that Beltran's children have been appointed as executors or administrators of Beltran's estate. Thus, the children may not assert § 1983 claims on Beltran's behalf. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998).

III.

Finally, Romero argues that the district court abused its discretion by denying her motion to reopen discovery. Romero sought additional discovery so that she could depose Warden McDaniel, Officer Howes, Officer Landon, and Kay Weiss, whose depositions were originally scheduled for September 2010 but were cancelled due to a conflict with defense counsel's schedule (according to Romero). One of the purposes of these depositions, Romero explained, was to identify the "doe" defendants—that is, the NDOC employees who made the decision to house Beltran with Potter but whose identities were unknown to Romero.

Romero asked for additional discovery three times: once in October 2010 (a

month before the November 2010 discovery deadline), once in 2011, and once in 2013. The district court denied the first motion without explanation, it never answered the second motion, and it denied the third motion in the same order in which it granted the Defendants' motion for summary judgment (the order now on appeal).

The Court wishes to emphasize that in the ordinary course, district courts should not ignore litigants' motions or deny them without explanation. Nonetheless, for two reasons, the district court did not abuse its discretion in refusing to allow additional discovery here. *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (refusal to reopen discovery is reviewed for abuse of discretion). First, as the district court correctly noted, Romero failed to conduct the depositions at issue at any time during the two-year period between 2008, when the litigation was first filed, and November 2010, when discovery closed. Thus, Romero did not "diligently pursue[] [her] previous discovery opportunities." *Panatronic*, 287 F.3d at 846.

Second, although Romero sought the depositions (at least in part) to identify the "doe" defendants, she had received a list of NDOC employees who fit the description of the "does" in August 2009 in the Defendants' responses to her interrogatories. Nonetheless, she never sought leave to amend her complaint to add those employees

9

as defendants.[1] Thus, Romero has failed to demonstrate "how allowing additional discovery would have precluded summary judgment," *Panatronic*, 287 F.3d at 846, and the district court did not abuse its discretion in denying Romero's motion to reopen discovery.

AFFIRMED.

---

[1]At oral argument, Romero's counsel maintained that Romero *had* moved to amend her complaint to add these defendants. Counsel then filed with the Court a copy of an opposition brief that was stricken from the district court docket for being oversized. In the stricken brief, Romero asked the court for leave to amend her complaint to add the additional defendants. In the brief that she refiled to comply with the district court's length requirements, however, she did not make this request.

Because the oversized brief was stricken from the district-court docket, it is not part of the record on appeal, and this Court may not consider it. *See* Fed. R. App. Proc. 10(a) (defining the record on appeal as consisting of, *inter alia*, "the original papers and exhibits filed in the district court"). In any case, the district court did not abuse its discretion by declining to address Romero's request for leave to amend her complaint, because it was not made in a properly filed brief.

*Romero v. Nevada Dept. of Corrections*, No. 14-17204

THOMAS, Chief Judge, concurring in part and dissenting in part:

I agree with much of the majority's disposition, but respectfully disagree in part.

I

I agree with the majority that the district court did not err in: (1) granting Defendants' motion for summary judgment as to Romero's claim of deliberate indifference to Beltran's medical needs; (2) entering summary judgment on Beltran's children's claims; and (3) denying Romero's motion to reopen discovery.

II

As to the claims of deliberate indifference to Beltran's safety and constitutional rights, it is undisputed that Beltran was murdered by a fellow inmate who had announced to prison officials his intention to kill his cellmate, and who had a history of violence. Despite the warnings, Beltran was housed with the inmate, who then killed him. Those undisputed facts would seem sufficient to survive a summary judgment motion. But the problems in this case are that (1) Romero largely named the wrong defendants, and (2) the district court–incorrectly

-1-

in my view–refused to consider evidence tendered by Romero when ruling on the summary judgment motion.

A

First, to the law. The Eighth Amendment serves to ensure that those of our citizens who are imprisoned shall not suffer "cruel and unusual punishments." U.S. Const. amend. VIII. "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (internal quotations and alterations omitted). A prison official's failure to protect an inmate in his custody from attack by another inmate is a violation of the Eighth Amendment if the resulting harm is "objectively, sufficiently serious," and the prison official acted with "deliberate indifference." *Id.* (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer*, 511 U.S. at 835) (internal quotations and alterations omitted). Beltran died in custody; the parties do not dispute that this is sufficiently serious to trigger Eighth Amendment scrutiny. Prison officials also were aware of the risk of harm to Beltran.

-2-

The district court based its summary judgment conclusion in large part on its *sua sponte* decision not to consider certain evidence because the evidence was not authenticated by affidavit. However, a longstanding rule of authentication is that documents may be authenticated by having been produced in discovery. *See e.g. Orr v. Bank of Am.*, 285 F.3d 764, 777 (9th Cir. 2002); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (concluding that "[t]he district court did not err in considering the documents as indicators of MPI's motivation . . . [because] MPI produced the documents to GoodTimes, many of the documents were on MPI letterhead and MPI does not contest their authenticity"); *see also* 31 Fed. Prac. & Proc. Evid. § 7105 (1st ed.) ("Authentication can also be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request."). The records at issue in this case were produced by the Defendants in discovery. At no point in the litigation did the Defendants contest the authenticity of these records. Therefore, in my view, the district court erred in deciding, *sua sponte*, not to consider these records.[1]

---

[1] Although I believe the district court should have considered the records, I commend the district court for a thorough examination of the record, claims, and defenses. The district court was faced with a messy record in a difficult case that had been litigated for over five years.

The majority asserts that Romero waived any argument about the admissibility of her evidence by failing to argue that she would be able to admit this evidence at trial or that it was produced by Defendants in discovery and is therefore admissible. Such an interpretation of the Federal Rules of Civil Procedure is untenable. Under Rule 56(c)(1), the party opposing summary judgment may "assert[] that a fact . . . is genuinely disputed [and] must support the assertion by: (a) citing to particular parts of materials in the record . . . ." The party seeking summary judgment may then "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. Rule 56(c)(2). Thus, a party opposing summary judgment need not preemptively demonstrate that her evidence would be admissible at trial. Rather, she need only comply with the Rule's requirements (including that the evidence be authentic or capable of being authenticated) in order to have her evidence considered by the district court.

With the benefit of consideration of the documents excluded by the district court, Romero had tendered sufficient evidence to show, in general, that prison officials had knowledge of the risk of harm to Beltran, and that there was a genuine issue of material fact as to whether the prison officials acted in deliberate indifference to that known risk. The evidence in the record that the district court

-4-

chose not to consider includes evidence that Potter was an "Aryan Warrior," that Beltran was convicted of sexual assault, that Potter previously violently assaulted fellow inmates and cell mates and thrice informed DOC caseworkers of his intention to assault or murder any cell mate with whom he was housed, that the caseworkers informed the warden of Potter's threats, and that Potter in fact murdered Beltran while both men were in custody. There also was evidence in the record that Aryan Warriors are known generally to condone and perpetrate violent assaults on sexual offenders, and, in this instance, members of the Aryan Warriors were charged in a federal RICO indictment for conspiracy and the murder of Beltran. This evidence, if considered, would have been sufficient to raise a triable issue of fact as to the prison officers' "deliberate indifference" to Beltran's safety. *See Farmer*, 511 U.S. at 842 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."). Thus, appropriately considered, the tendered evidence was sufficient for Romero to create a genuine issue of fact on the deliberate indifference claim.

B

The question, then, is whether Romero tendered sufficient evidence of a causal connection to the named Defendants to survive summary judgment. I agree with the majority and the district court that as to many of the named Defendants, the answer is "no." Indeed, the actual housing decision appears to have been made by a prison official who was not named as a defendant in this case. There is no record evidence that Officers Howes, Stolk, Otero, and Landon were involved in the decision to house Beltran with Potter, nor that these Officers were deliberately indifferent to any risk perceived at the time of the incident. There is also no evidence that the caseworkers to whom Potter conveyed the threats had anything to do with the housing decision or had any authority over housing. Nor is there any evidence of a causal connection between Director Wharton and the events alleged in the complaint. Thus, I agree with the district court and the majority that summary judgment was appropriately entered in favor of these Defendants.

However, I respectfully disagree that Romero has failed to raise a genuine issue of material fact as to the Warden's liability. The Warden was informed of the risk and certainly had the ultimate authority to take action as to housing. Indeed, the housing policy at issue bears the Warden's signature. Of course, whether Romero could prevail at trial on the claim is another question, but at the summary

judgment stage all she need do is establish the existence of a genuine issue of material fact.

It is also worth noting that the district court concluded that a question of fact remains with regard to Romero's state law wrongful death claim. "With respect to the duty of prison officials to protect inmates from attacks by other inmates, [ . . . the Nevada Supreme Court] defines the duty as one of reasonable care to prevent intentional harm or to avoid an unreasonable risk of harm, when such harm is foreseeable." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1059 (Nev. 2007). The Defendants argued they owed no duty to Beltran because Potter's attack was unforeseeable. But the district court denied the Defendants' motion for summary judgment on this issue, noting that "a question of fact exists as to whether Moving Defendants were 'on notice' that Potter's gang affiliation, Beltran's own gang-related classification, and Beltran's sexual assault conviction, and Potter's history of violence against other inmates—four facts that Moving Defendants do not contest—made it foreseeable that celling these inmates together put Beltran in unreasonable risk of harm." The district court then relinquished supplemental jurisdiction and remanded the wrongful death claim to Nevada state court. Although the standards for an Eighth Amendment violation and a state law wrongful death claim are different—deliberate indifference versus duty to avoid an

-7-

unreasonable risk of harm—the facts offered to support both claims were the same.

Therefore, in sum, I agree with the majority as to almost all issues. However, I respectfully disagree that Romero did not establish a genuine issue of material fact as to her claim against the Warden.

Therefore, I concur in part and respectfully dissent in part.