MEMORANDUM *
On December 28, 2006, Anthony Bel-tran, an inmate at Ely State Prison in Nevada, was fatally stabbed by his cellmate, Douglas Potter. Beltran’s mother, Helen Romero, brought this lawsuit against Nevada, the Nevada Department of Corrections (“NDOC”), and various NDOC employees (collectively, the “Defendants”), alleging that they failed to protect Beltran from Potter. Romero asserted violations of Beltran’s Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983, as well as state-law claims for wrongful death, negligent supervision, and vicarious liability. She also asserted these claims on behalf of Beltran’s minor children.
After years of litigation delays, the district court granted the Defendants’ motion for summary judgment as to Romero’s § 1983 claims, and remanded the remaining state-law claims to state court. Romero appeals only the district court’s grant of summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
I.
Romero first argues that the district court abused its discretion by refusing to consider her evidence on summary judgment. Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) (evidentiary rulings are reviewed for abuse of discretion). At the hearing on the Defendants’ summary judgment motion, the district court repeatedly pointed out that much of Romero’s documentary evidence was unauthenticated. Despite these warnings, Romero did not attempt to authenticate her evidence during the two-month period *644 between the hearing and the date of the district court’s order.
On appeal, Romero argues only that the district court’s evidentiary ruling was an abuse of discretion because it was made sua sponte. We find this argument unpersuasive. See Fed. R. Civ. P. 56(f)(2) (explicitly providing that a district court may grant summary judgment sua sponte after giving the losing party “notice and a reasonable time to respond”). Although Rule 56 was amended in 2010 to eliminate the unequivocal requirement that evidence submitted at summary judgment must be authenticated, the amended Rule still requires that such evidence “would be admissible in evidence” at trial. Fed. R. Civ. P. 56(c)(4). Romero does not argue that she would have been able to proffer her evidence in admissible form at trial. Nor does she argue that her evidence was authenticated because it was produced by the Defendants in discovery. These arguments are therefore waived, and we need not consider whether they would sustain Romero’s challenge to the district court’s evidentiary rulings. Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994) (arguments not made before the district court or in the appellant’s opening brief are waived).
II.
Even if the district court did err by refusing to consider Romero’s evidence submitted in opposition to the Defendants’ motion for summary judgment, that error was harmless, because Romero’s evidence did not raise a genuine issue of material fact as to the liability of any Defendant for Beltran’s death. Orr, 285 F.3d at 773 (“[We] must affirm the district court unless its evidentiary ruling was manifestly erroneous and prejudicial.”). Indeed, the Defendants’ answers to Romero’s interrogatories and some of Romero’s documentary evidence suggest that other NDOC employees may have been responsible for assigning Beltran to live with Potter, and that these employees may have known that the assignment placed Beltran at an increased risk of harm. Despite the fact that Romero knew the identity of these individuals as early as August 2009, none of them were named as defendants in this action in the time between August 2009 and the hearing on the Defendants’ motion for summary judgment in October 2013.
A.
None of Romero’s evidence raises a genuine issue of material fact that either Glen Whorton, the director of NDOC, or E.K, McDaniel, the warden of Ely State Prison, were “deliberately indifferent” to Beltran’s safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Nothing in the record tends to prove that either of these two Defendants was involved with the decision to house Beltran with Potter. Romero argues that these Defendants were responsible for implementing flawed policies that led to Bel-tran’s death, but she has failed to demonstrate that any challenged policy was “so deficient that the policy itself [was] a repudiation of constitutional rights,” Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). Thus, the district court’s grant of summary judgment as to Romero’s claims against Director Whorton and Warden McDaniel was not error.
B.
Nor does Romero’s evidence raise a genuine issue of material fact that any of the correctional officers sued in this action— Officers Trent Howes, Jason Stolk, Robert Otero, and Theresa Landon—were “deliberately indifferent” to Beltran’s safety. Again, none of Romero’s evidence tends to prove that any of these Defendants were *645 involved with the decision to house Beltran with Potter. Indeed, Romero has failed to adduce any evidence that Officers Stolk or Otero were involved in the events leading up to Beltran’s death. Officer Landon was one of the correctional officers who responded to the stabbing after it occurred, but Romero does not explain how Officer Landon’s conduct was “deliberately indifferent” to Beltran’s health or safety.
Romero has also failed to adduce evidence demonstrating that Officer Howes, who handcuffed Beltran immediately prior to his being stabbed by Potter, was “deliberately indifferent” to Beltran’s safety. Nothing in the record suggests that Officer Howes was aware of Potter’s intention to attack Beltran, or even that Potter was likely to do so. Moreover, even if it were a constitutional violation for Officer Howes to handcuff Beltran in his cell while leaving Potter unrestrained, as Romero argues, this fact was not “clearly established” at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 224, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Officer Howes is therefore entitled to qualified immunity, and the district court’s grant of summary judgment in his favor was not error.
C.
Romero has also failed to demonstrate that Michael Drain and Robert Chambliss, two NDOC caseworkers, were “deliberately indifferent” to Beltran’s safety. Romero proffered three notes that Potter sent to Drain and Chambliss in 2005, in which Potter told the caseworkers that he did not want a cellmate and that if they placed one with him, he would assault that inmate. This, Romero argues, should have put Chambliss and Drain on notice that housing Beltran with Potter would be dangerous to Beltran.
But nothing in the record suggests that either caseworker was involved in the decision to house Beltran with Potter. In any case, the notes were sent a full year before Potter attacked Beltran, and in the interim, Potter had lived with two other cellmates without incident. Romero therefore failed to raise a genuine issue of material fact as to Drain’s and Chambliss’s “deliberate indifference” to Beltran’s safety, and the district court’s grant of summary judgment in favor of Chambliss and Drain was not error,
D.
Romero has also failed to adduce evidence that any of the Defendants were deliberately indifferent to Beltran’s medical needs. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Romero does not dispute that a medical team was on the scene within minutes of the attack, nor does she explain how a speedier medical response would have increased Beltran’s chances of survival. The district court’s grant of summary judgment on this claim was therefore not error.
E.
Romero also challenges the district court’s decision to dismiss the § 1983 claims she brought on behalf of Beltran’s minor children. Section 1983 adopts as its law of survivorship the law of the forum state, Robertson v. Wegmann, 436 U.S. 584, 590, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), which here is Nevada. Under Nevada law, only the “executor or administrator” of the deceased’s estate can sue on the deceased’s behalf. Nev. Rev. Stat. § 41.100(3). Romero has adduced no evidence that Beltran’s children have been appointed as executors or administrators of Beltran’s estate. Thus, the children may not assert § 1983 claims on Beltran’s behalf. Moreland v. Las Vegas Metro. Police Dep’t, 159 F.3d 365, 370 (9th Cir. 1998).
*646 III.
Finally, Romero argues that the district court abused its discretion by denying her motion to reopen discovery. Romero sought additional discovery so that she could depose Warden McDaniel, Officer Howes, Officer Landon, and Kay Weiss, whose depositions were originally scheduled for September 2010 but were cancelled due to a conflict with defense counsel’s schedule (according to Romero). One of the purposes of these depositions, Romero explained, was to identify the “doe” defendants—that is, the NDOC employees who made the decision to house Beltran with Potter but whose identities were unknown to Romero.
Romero asked for additional discovery three times: once in October 2010 (a month before the November 2010 discovery deadline), once in 2011, and once in 2013. The district court denied the first motion without explanation, it never answered the second motion, and it denied the third motion in the same order in which it granted the Defendants’ motion for summary judgment (the order now on appeal).
The Court wishes to emphasize that in the ordinary course, district courts should not ignore litigants’ motions or deny them without explanation. Nonetheless, for two reasons, the district court did not abuse its discretion in refusing to allow additional discovery here. Panatronic USA v. AT&T Corp., 287 F.3d 840, 846 (9th Cir. 2002) (refusal to reopen discovery is reviewed for abuse of discretion). First, as the district court correctly noted, Romero failed to conduct the depositions at issue at any time during the two-year period between 2008, when the litigation was first filed, and November 2010, when discovery closed. Thus, Romero did not “diligently pursue[ ] [her] previous discovery opportunities.” Panatronic, 287 F.3d at 846.
Second, although Romero sought the depositions (at least in part) to identify the “doe” defendants, she had received a list of NDOC employees who fit the description of the “does” in August 2009 in the Defendants’ responses to her interrogatories. Nonetheless, she never sought leave to amend her complaint to add those employees as defendants.[1] Thus, Romero has failed to demonstrate “how allowing additional discovery would have precluded summary judgment,” Panatronic, 287 F.3d at 846, and the district court did not abuse its discretion in denying Romero’s motion to reopen discovery.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. At oral argument, Romero's counsel maintained that Romero had moved to amend her complaint to add these defendants. Counsel then filed with the Court a copy of an opposition brief that was stricken from the district court docket for being oversized. In the stricken brief, Romero asked the court for leave to amend her complaint to add the additional defendants. In the brief that she refiled to comply with the district court’s length requirements,- however, she did not make this request.
Because the oversized brief was stricken from the district-court docket, it is not part of the record on appeal, and this Court may not consider it. See Fed, R. App. Proc. 10(a) (defining the record on appeal as consisting of, inter alia, "the original papers and exhibits filed in the district court”). In any case, the district court did not abuse its discretion by declining to address Romero's request for leave to amend her complaint, because it was not made in a properly filed brief.