**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INSINKERATOR, LLC, a Delaware limited liability company, | No. 25-286 |
| *Plaintiff - Appellee*, | D.C. No. 8:24-cv-02600-JVS-ADS |
| v. | |
| JONECA COMPANY, LLC, a Delaware limited liability company; JONECA CORPORATION, a California corporation, | OPINION |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted August 22, 2025
Pasadena, California

Filed December 29, 2025

Before: Marsha S. Berzon, Stephen A. Higginson, and
Jennifer Sung, Circuit Judges.[*]

Opinion by Judge Higginson

---

[*] The Honorable Stephen A. Higginson, Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

**SUMMARY**\*\*

## False Advertising / Preliminary Injunction

In a case in which garbage-disposal manufacturer InSinkErator, LLC, claimed that its competitor, Joneca Company, LLC, engaged in false advertising in violation of the Lanham Act by marketing garbage disposals with horsepower designations that do not reflect the output power of the disposals' motors, the panel affirmed the district court's preliminary injunction requiring Joneca to place disclaimers on its sales materials and packaging.

The panel held that the district court did not err in determining that InSinkErator was likely to succeed on the merits of its false advertising claims. First, Joneca did not show that InSinkErator was unlikely to succeed on the falsity element of its Lanham Act claim. Second, the district court did not err in finding that Joneca's horsepower claims were material because they likely influenced consumer purchasing decisions.

With respect to the remaining preliminary injunction factors, the panel held that the district court did not err in finding that InSinkErator would be irreparably harmed absent preliminary relief, in balancing the hardships, and in finding that the injunction was in the public interest.

---

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael Gervais (argued) and Kalpana Srinivasan, Susman Godfrey LLP, Los Angeles, California; Joseph S. Grinstein, Susman Godfrey LLP, Houston, Texas; Christopher A. Cole, Michael R. Justus, and Timothy H. Gray, Katten Muchin Rosenman LLP, Washington, D.C.; David Halberstadter and Asena Baran, Katten Muchin Rosenman LLP, Los Angeles, California; Julia L. Mazur, Katten Muchin Rosenman LLP, Chicago, Illinois; for Plaintiff-Appellee.

Trenton H. Norris (argued), Hogan Lovells US LLP, San Francisco, California; Michael L. Turrill and Joseph R. O'Connor, Hogan Lovells US LLP, Los Angeles, California; for Defendants-Appellants.

**OPINION**

HIGGINSON, Circuit Judge:

Defendant-Appellant Joneca Company, LLC, makes garbage disposals and markets them with horsepower designations. Joneca's competitor, Plaintiff-Appellee InSinkErator, LLC, contends that Joneca's horsepower designations are false advertising because they do not reflect the output power of the disposals' motors. Joneca responds that its horsepower designations accurately reflect the electrical power drawn by its units. On InSinkErator's motion for a preliminary injunction, the district court agreed with InSinkErator's definition of horsepower, found that Joneca's claims were literally false and apt to shift business from InSinkErator to Joneca, and issued the preliminary

injunction.  Joneca (and a related business entity, the Joneca Corporation) appeal from the preliminary injunction, challenging the district court's falsity determination, its finding that Joneca's horsepower claims were material to consumer purchase decisions, and its irreparable harm analysis.  Finding no error in the district court's determinations, we affirm.

I.

InSinkErator and Joneca are competitors.  Both companies manufacture garbage disposals.  InSinkErator dominates the U.S. market, which it pioneered almost a century ago.  Joneca entered the U.S. market in 2005 as a low-cost competitor.  Joneca attributes its lower prices to various mechanical advantages, like its use of direct current and the torque of its smaller grinder turntable.

InSinkErator contends that Joneca competed by misrepresenting the specifications of its units.  Joneca markets disposal units with various horsepower designations, such as 1/3, 1/2, 3/4, 1, and 1 1/4 horsepower. Horsepower is a unit of power (in physics terms, the rate at which work is performed or energy is transferred). InSinkErator maintains that, in this context, consumers necessarily understand references to "horsepower" to mean "output horsepower"—the amount of power that a disposal's motor can provide to the disposal's grinding mechanism— as opposed to "input horsepower," the electric power used by the system as a whole.  InSinkErator alleges that when it tested Joneca's products on or around August 29, 2024, it discovered that Joneca's disposals produced output horsepower substantially below advertised levels.

On November 27, 2024, InSinkErator sued Joneca in federal district court.  InSinkErator claimed that Joneca's

horsepower representations were actionable as false advertising under the Trademark Act of 1946 (Lanham Act), ch. 540, 60 Stat. 427 (codified as amended in scattered sections of 15 U.S.C.). InSinkErator also brought claims under California law. InSinkErator alleged that the horsepower claims were false and misleading, deceived consumers, and influenced purchasing decisions. InSinkErator further alleged that it had been harmed by these misrepresentations because "Joneca is stealing accounts, sales, and goodwill from InSinkErator by deceiving retailers and consumers into paying for an inferior product that does not meet Joneca's purported specifications." InSinkErator asked for a declaratory judgment that Joneca had violated the Lanham Act, an injunction ordering Joneca to stop its purportedly false advertising, damages, and other relief.

On December 6, 2024, InSinkErator moved for a preliminary injunction. InSinkErator asked the court to restrain Joneca from misrepresenting the horsepower of its units. InSinkErator attached declarations of fact and expert opinion explaining that "[h]orsepower labelling aimed at consumers of garbage disposals should be based on power output, *i.e.*, the mechanical power of the motor as measured at the motor shaft," supporting InSinkErator's testing methodology, and advancing its position that Joneca was impermissibly undercutting InSinkErator's prices while misrepresenting its products' horsepower.

Joneca responded that its advertising was accurate and had not deceived consumers because "the industry standard for measuring horsepower of disposers is based on the *input* horsepower drawn by the full *disposer system*, not the *output* horsepower of the component *motor in isolation*." Joneca supported its position with declarations, including an expert opinion criticizing InSinkErator's reliance upon motor

horsepower in isolation from the full system and stating that input power was used for rating disposal units under Underwriters Laboratories standard UL 430.

InSinkErator filed a reply with rebuttal declarations directed in part to UL 430. Joneca objected and requested that the court disregard the new declarations, or, in the alternative, provide Joneca an opportunity to respond.

On January 10, 2025, after a hearing, the district court granted InSinkErator's motion for a preliminary injunction. The court declined to allow Joneca to introduce additional evidence responsive to InSinkErator's rebuttal declarations. The court determined that InSinkErator was likely to show that Joneca's claims were "literally false by necessary implication," reasoning that "deception [wa]s presumed" as a result. The court found that InSinkErator was likely to show that the deception was material to consumers based on InSinkErator's "market research" and "the common sense impression that more horsepower means more efficiency." Describing a risk to InSinkErator of "diverted sales or diminished goodwill," the court found likely injury to InSinkErator and that the equities favored an injunction. Accordingly, the court required Joneca to place disclaimers on its sales materials and product packaging stating: "Horsepower claimed on package does not indicate motor output or motor power applied for processing." The court ordered InSinkErator to post a $500,000 bond.

Joneca filed a timely notice of appeal.[1]

---

[1] After oral argument, counsel for Joneca submitted a letter brief, which we have received and reviewed. Simultaneously, counsel filed a motion to file that letter. The motion is denied as unnecessary. *See* FED. R. APP. P. 28(j).

## II.

A district court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *Doe v. Horne*, 115 F.4th 1083, 1099 (9th Cir. 2024). "A district court 'necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Johnson v. Couturier*, 572 F.3d 1067, 1078–79 (9th Cir. 2009) (quoting *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009)). "The district court's interpretation of the underlying legal principles" is reviewed de novo. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). A finding of fact is clearly erroneous "if it is implausible in light of the record, viewed in its entirety, or if the record contains no evidence to support it." *Id.* (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005)). "But 'as long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.'" *Johnson*, 572 F.3d at 1079 (citation modified) (quoting *Am. Trucking Ass'ns*, 559 F.3d at 1052).

When a district court sets a bond for a preliminary injunction, this court "review[s] objections to the amount of [the] bond for abuse of discretion." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001), *as amended* (citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999)).

## III.

We now consider whether Joneca has shown these kinds of errors in the district court's issuance of the preliminary injunction. When evaluating whether to grant a preliminary injunction, a district court considers whether the plaintiff has

established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Johnson*, 572 F.3d at 1078 (alterations in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The district court determined that each of these factors weighed in favor of a preliminary injunction. Joneca challenges the district court's analysis of all four preliminary injunction factors.

## A.

Joneca contends that the district court erred in determining that InSinkErator was likely to succeed on its false advertising claim. "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5 he plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (footnotes omitted); *see also* 15 U.S.C. § 1125(a). The district court found that InSinkErator had "shown a likelihood to satisfy all of the elements of its false

advertising claim." Joneca takes issue with the district court's analysis of the falsity and materiality factors.[2]

i.

First, Joneca argues that its horsepower claims, based on input to the device as a whole rather than the output available to the grinding mechanism, were not false. This case involves literal falsity, which is one of the ways "[t]o demonstrate falsity within the meaning of the Lanham Act." *Southland Sod*, 108 F.3d at 1139.[3] Literal falsity may be evaluated by (1) determining "the claim conveyed by the advertisement" and then (2) assessing whether this claim is literally false. *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 34 (1st Cir. 2000); *accord Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992).

The scope of a claim is determined "in its full context." *Southland Sod*, 108 F.3d at 1139. Accordingly, a message may be conveyed explicitly or by "necessary implication," *id.*—*i.e.*, when the message is "necessarily and unavoidably . . . received by the consumer," *Novartis*, 290

---

[2] The district court presumed deception based on falsity. Joneca argues that the district court's conclusions on the deception factor were incorrect because of its incorrect falsity analysis. Joneca does not otherwise challenge the district court's analysis of deception.

[3] Alternatively, a plaintiff may show that a statement was "literally true but likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d at 1139; *see, e.g.*, *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011). Only literal falsity is at issue here.

F.3d at 588, from "the words or images" of the advertisement "considered in context," *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). Put otherwise, "[a] claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox*, 228 F.3d at 35.

The district court found Joneca's claims literally false by necessary implication. The court determined that "[t]he advertisement unequivocally claims that a given machine has a specific horsepower, such as 1 HP, 1 1/4 HP, 3/4 HP, or 1/2 HP." And the court agreed with a definition introduced by InSinkErator from a national retailer's website that described horsepower for a disposal unit as "[t]he total power output capability from the included motor." The court drew support for that definition from the opinion of InSinkErator's expert, who relied on testing standards and a standard text in the field as indicating "[t]he general consensus among engineers." The court was not persuaded by Joneca's expert's citation to UL 430, agreeing with InSinkErator that "UL 430 is plainly a safety guide for ensuring that switches and controls can safely handle the input current drawn by a motor." The court noted that Section 16.4 of UL 430 provided for current input testing "regardless" of horsepower designations on the motor or accompanying packaging.

As a threshold issue, Joneca appears to urge this court to assess the meaning of its claims, including any necessary implications, de novo. In *Southland Sod*, however, this court indicated that assessing an advertisement's meaning to its audience can involve factual considerations. *See Southland Sod*, 108 F.3d at 1144 ("[A] jury could reasonably conclude that the bar chart advertisements, when read as a whole,

contain literally false statements."); *see also, e.g.*, *World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*, No. 24-4976, 2025 WL 2427613, at \*2 (9th Cir. Aug. 22, 2025); *Clorox*, 228 F.3d at 34; *Mead Johnson & Co. v. Abbott Lab'ys*, 209 F.3d 1032, 1034 (7th Cir. 2000) (per curiam); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998); *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944–45 (3d Cir. 1993); *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 979 (2d Cir. 1988).

Even if Joneca is correct that advertisement claims should be construed de novo like contract terms—a question we need not reach or decide today—we would still review subsidiary factual findings bearing on construction for clear error. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324 (2015) (establishing clear error review for subsidiary factual determinations going to the scope of patent claims). It is such factual findings that are at issue here. Reviewing conflicting evidence on the scope of Joneca's horsepower claims, the district court found InSinkErator's submissions more persuasive.[4] The district court determined that the evidence before it indicated a "general consensus" about how the term "horsepower" is used and understood, and found that Joneca's "input-based interpretation d[id] not seem reasonable." When a court construes "technical words or phrases" by reference to

---

[4] Indeed, even under decisions in the line of authority cited by Joneca, the district court assessed the meaning of Joneca's horsepower claims by resolving a dispute over "whether facts exist[ed] so as to make [Joneca's] statement[s] true." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999).

"extrinsic evidence" about usage, that "factual determination, like all other factual determinations, must be reviewed for clear error" under Federal Rule of Civil Procedure 52(a)(6). *Teva*, 574 U.S. at 326 (quoting *Great N. Ry. Co. v. Merchs.' Elevator Co.*, 259 U.S. 285, 292 (1922)).

Even under the proper standard of review, Joneca contends, "the evidence that the District Court relied on does not plausibly support the conclusion that Joneca's horsepower claims are literally false." Joneca argues that its claims accurately stated the electrical power drawn by its units, consistent with the UL 430 industry standard. Joneca criticizes the district court for crediting "resources related to motors generally" rather than UL 430's disposal-specific standard. And Joneca argues that input horsepower "more closely correlates to the performance of the entire waste disposer system" as it would be used by a consumer.

These objections fail to show clear error in the district court's assessment of the evidence. The district court considered battling expert opinions speaking to these questions alongside a wide range of supporting resources, including industry resources and a national retailer's website.[5] Weighing this evidence, the court found that UL 430 was Joneca's only support for equating horsepower with input power with regard to garbage disposals and that UL

---

[5] The website exhibit was a screen capture from a national retailer that defined horsepower when providing technical specifications for an InSinkErator unit. Joneca describes this as InSinkErator's own advertisement. Our review of this evidence has not left us "with the definite and firm conviction that a mistake has been committed" in finding that the advertisement, including the definition, was the retailer's, not InSinkErator's. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

430 was less persuasive than InSinkErator's references.[6] Those findings are consistent with the court's comments at the preliminary injunction hearing that "the vast majority of expert opinion seem[ed] to say" that despite the incidental connection between "more electric power" and "a given level of grinding," "the key to this device is at the other end of the grinding function." Although Joneca criticizes the district court's findings that InSinkErator's evidence was persuasive or credible, Joneca has not shown that those findings were "implausible in light of the record, viewed in its entirety." *Stormans*, 586 F.3d at 1119.

Joneca further argues that the district court should at least have found that its horsepower claims were ambiguous, but this contention runs aground for similar reasons. The district court credited InSinkErator's evidence to find that "horsepower must be measured by using the motor's mechanical *output*," concluding that Joneca's "garbage disposals d[id] not deliver the output of the horsepower they purport to provide." Nothing in the district court's decision suggests that the court determined that Joneca's claims were "balanced between several plausible meanings"—and thus "too uncertain to serve as the basis of a literal falsity claim"—when understood in context. *Clorox*, 228 F.3d at

---

[6] The district court found particularly persuasive correspondence from UL engineers that "UL 430 is a safety standard for Waste Disposers and is not meant to be used to determine the horsepower ratings of Waste Disposers." Joneca contends that this correspondence was hearsay and improperly submitted in a rebuttal declaration. But hearsay may be considered in support of a preliminary injunction. *Johnson*, 572 F.3d at 1083. The emails responded to Joneca's opposition papers, which relied on UL 430, and when Joneca raised its timing objections, the district court (perhaps reasonably doubting that further development of the issue would be productive) exercised its discretion to place a reasonable stopping point on the development of the early-stage, preliminary record.

35. Instead, the district court found Joneca's proposed interpretation implausible, explaining that UL engineers themselves refuted Joneca's use of UL 430, its sole supporting reference.

Finally, Joneca takes issue with the district court's finding that "[t]he general consensus among engineers . . . appears to be that horsepower is determined by mechanical output." Joneca urges that literal falsity requires the claim's audience to "receive a false message from the product's name or advertising." *Novartis*, 290 F.3d at 587. Joneca therefore suggests that the district court's findings about industry usage were not directed to the correct legal question. InSinkErator does not dispute that the relevant question is what message an advertisement conveys "to the viewing audience." *Johnson & Johnson * Merck*, 960 F.2d at 298.

But the district court did consider Joneca's audience. In finding that "horsepower must be measured" according to motor output, the district court relied on InSinkErator's consumer-facing evidence, whereas the court found that Joneca had no support for its interpretation other than an inapplicable and non-consumer-facing safety standard. In its analysis of UL 430, the district court relied on a section of the standard that explicitly stated that current input tests should be run without regard for horsepower ratings marked on products and packaging. The court concluded that UL 430 did not show that "input power is the proper interpretation for *labeling* horsepower." (emphasis added).

The district court's materiality analysis provides helpful context. Besides the retailer's website explicitly considered by the district court in its falsity analysis—which defined horsepower as "[t]he total power output capability from the

included motor"—the district court considered, and credited, other similar evidence in its materiality analysis. That evidence included an explanation from a different national retailer's website that "[g]arbage disposal horsepower (HP) determines what the disposal is capable of grinding" and evidence from yet another national retailer's website discussing that "higher . . . HP" would mean "[f]ood waste will be ground into finer particles." Given its falsity analysis, the district court appears to have concluded that the claims were material to consumer choices because they conveyed statements about the power of the grinding mechanism. We conclude that the district court did not clearly err in finding that InSinkErator was likely to show that Joneca's horsepower claims referred to output horsepower by necessary implication.

The next question is whether, with Joneca's claims so construed, those claims were literally false. Joneca urges holding that its claims were not sufficiently unsubstantiated to meet the standard for literal falsity, which it characterizes as demanding. The district court does not seem to have elaborated a legal standard for falsity but concluded that Joneca's "garbage disposals do not deliver the output of the horsepower they purport to provide." Joneca contends that this finding was not sufficient because a literal falsehood has to be "bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). It must, Joneca says, be "unambiguously false." *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014). According to Joneca, only a "completely unsubstantiated advertising claim" meets that standard. *See Novartis*, 290 F.3d at 590. Joneca suggests that if the district court had applied this

standard, it would have found that the "industry standard for measuring horsepower for household disposers," UL 430, substantiated Joneca's claims, preventing them from being literally false.

As InSinkErator correctly points out, Joneca's cases do not stand for the proposition it enunciates. Both *Schering-Plough* and *Novartis* described the standard for per se literal falsity but anticipated that literal falsity could be proved by evidence too. *See Schering-Plough*, 586 F.3d at 513 (describing cases, including *Southland Sod*, as "add[ing] to 'literal falsity' such qualifiers as that the meaning of the alleged literal falsehood must be considered in context and with reference to the audience to which the statement is addressed" and distinguishing situations where the claims are "false and misleading per se" with "no need to consider context or audience"); *Novartis*, 290 F.3d at 590. At least when literal falsity is shown by evidence, a complete lack of substantiation for the opposing position—or absence of "conflicting evidence," as Joneca puts it—is not required. In *Southland Sod*, this court explained that claims supported by product testing might nonetheless be literally false if the tests were "'not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." 108 F.3d at 1139 (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)). The court anticipated that this unreliability could be shown by contradiction or by lack of support from "other scientific tests," *id.*—in Joneca's words, "conflicting evidence."

We conclude that Joneca has not shown that InSinkErator is unlikely to succeed on the falsity element of its Lanham Act claim.

ii.

Next, Joneca argues that the district court erred in concluding that InSinkErator was likely to show that Joneca's false claims were material. Advertising claims are "material" when they are "likely to influence" purchasing decisions. *Southland Sod*, 108 F.3d at 1139.

The district court concluded that "consumer and retailer experience, along with common sense, suggest that horsepower is a critical determination to consumers when purchasing a garbage disposal." The court first determined that horsepower was "an inherent part of" garbage disposals because of "the importance of horsepower to the quality and characteristics of a garbage disposal." *See Nat'l Basketball Ass'n v. Motorola*, 105 F.3d 841, 855 (2d Cir. 1997) (requiring materiality to be shown by "'misrepresent[ations of] an "inherent quality or characteristic"'" of the product" (quoting *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys*, 850 F.2d 904, 917 (2d Cir. 1988))). Then, alternatively, the court determined that InSinkErator would likely show that Joneca's false horsepower claims were material even if horsepower is not an inherent part of the product. In support of that determination, the court described InSinkErator's "market research" showing that "consumers ranked horsepower as one of the top purchasing considerations for garbage disposals." The court also noted that retailers organized disposals by horsepower in shelving those products, which "signals that horsepower is an important— if not primary—distinction used by retailers to market [disposals] to consumers." Finally, the court relied on retailer websites that expressly link horsepower to the effectiveness of disposal units. For example, one website tells customers that "[t]he higher the HP, the better the disposal will run."

Joneca objects to the district court's application of the Second Circuit's *NBA* test (since restated, *see Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 70 & n.11 (2d Cir. 2016)), arguing that a misstatement about an inherent quality or characteristic of a product is not necessarily material, and that more evidence is needed to show that such a statement influences consumer purchasing decisions. InSinkErator responds that statements about inherent qualities and characteristics are the "types of statements reasonable persons would recognize as likely to influence a purchasing decision." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 939 (8th Cir. 2021). We need not decide whether a dispositive rule is established by either of those propositions, as the district court explicitly made an independent determination of materiality, separate from its inherent characteristic analysis.

Joneca next argues that we should require "direct evidence showing how consumers would likely react to the alleged deception"—"like surveys and consumer declarations"—to show that a deception is material. Joneca does not adequately address the baseline proposition that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 724 (9th Cir. 2025) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)). This court previously rejected a rule that would have kept a consumer declaration from being used to prove materiality, stating that "[a]lthough a consumer survey could also have proven materiality in this case, we decline to hold that it was the *only* way to prove materiality." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012). Joneca has not established that the evidence of materiality here is insufficiently relevant or

too speculative to be considered on an application for a preliminary injunction.

To the extent Joneca challenges the district court's weighing of the evidence, Joneca fails to show clear error. Joneca objects that the district court should have credited its "direct evidence of consumer decision making show[ing] that consumers prefer Joneca's disposers because of their better performance."   But it was the district court's prerogative to find InSinkErator's evidence ("direct" or not) more "persuasive" than Joneca's in the first instance. *Mi Familia Vota*, 129 F.4th at 724 (quoting *Desert Palace*, 539 U.S. at 100).  The customer reviews that Joneca advances primarily discuss how "powerful" Joneca's units are, indicating that consumers *do* care about power.  Joneca argues that because consumers are pleased with the power of their Joneca units they must not be concerned about horsepower designations when selecting a disposal.  That effort cannot square with the district court's falsity analysis and falls short of the clear error mark.

Joneca registers several other objections to InSinkErator's evidence, but these fall short too.  Joneca says that the district court should not have relied on InSinkErator's "market research" because it was described by a witness who started working for InSinkErator after the studies were commissioned.  To the extent these objections relate to the admissibility of such statements, they are not proper, *see Johnson*, 572 F.3d at 1083, and to the extent they relate to the reliability or credibility of the evidence, Joneca has not shown that the district court should not have credited the witness's statement that she "personally reviewed that research and the research findings are consistent with my understanding and experience."  Joneca further argues that descriptions of horsepower as "one of the top purchasing

considerations for disposals" and of horsepower's role in organizing retail displays were too generic to support the district court's extrapolations. But given the posture and the record as a whole, we do not find those inferences attenuated or speculative, much less "implausible." *Stormans*, 586 F.3d at 1119.

Finally, Joneca argues that the district court erred as a matter of law in relying on the general importance of horsepower to consumers, while making no findings about whether Joneca's specific understatements of horsepower would have been material to purchasing decisions. But the district court found that InSinkErator was likely to "show that the false advertising was material." This conclusion was supported not only by the general importance of horsepower to consumers, but also by a lengthy analysis of the use of horsepower as a "key *differentiating* factor when it comes to purchasing and advertising garbage disposals" (emphasis added), with national retailers organizing products by horsepower designation. For example, the district court explained, Home Depot displays competitors' disposals side-by-side based on their horsepower labels, *i.e.*, "Joneca's 1HP disposal [is] adjacent to InSinkErator's 1HP disposal." Home Depot describes 1 horsepower disposals as "Heavy Duty," 3/4 horsepower disposals as "Medium Duty," and 1/3 and 1/2 horsepower disposals as "Light Duty." Because retailers display disposals to consumers by horsepower level, it was reasonable for the district court to infer that a false claim about a disposal's horsepower—*i.e.*, a horsepower claim that causes a disposal that lacks even the horsepower to qualify as Medium Duty to be displayed in the Heavy Duty section—would materially affect whether and how consumers would compare the unit to competing products.

Now consider the district court's analysis of Lanham Act injury. The Second Circuit has stated that "in many cases the evidence and the findings by the court that a plaintiff has been injured or is likely to suffer injury will satisfy the materiality standard—especially where the defendant and plaintiff are competitors in the same market and the falsity of the defendant's advertising is likely to lead consumers to prefer the defendant's product over the plaintiff's." *Church & Dwight*, 843 F.3d at 70–71. That guidance is helpful here. The district court found that Joneca's horsepower claims were likely to result in lost business for InSinkErator because consumers were choosing Joneca over InSinkErator based on Joneca's claims. The court found that "horsepower—and thereby falsehood—is prominently displayed at the point-of-sale in retail shops" and reasoned that "horsepower is commonly used to differentiate garbage disposals." The court further explained that when "a false statement is prominently displayed on a direct competitor's product, and sold side-by-side at the same retailer as if to compare products and value, there is a real likelihood" of "diverted sales or diminished goodwill," connecting Joneca's horsepower claims to InSinkErator's asserted loss of market share (and shelf space) to Joneca. Those findings of lost business further support our conclusion that the district court did not err in finding that Joneca's horsepower claims were material because they likely influenced consumer purchasing decisions.

## B.

Joneca next argues that the district court erred in finding that InSinkErator would be irreparably harmed absent preliminary relief. After rejecting InSinkErator's arguments attributing price erosion to Joneca, the district court determined that InSinkErator had shown that Joneca's

misstatements would cost it goodwill and applied the principle that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). The court appeared to credit InSinkErator's account that a retailer had awarded shelf space to Joneca instead of InSinkErator and that Joneca's "fake value proposition" of inflated horsepower at a low price would influence bidding that was in process for "private label contracts with major retailers."

Contesting the district court's irreparable harm determination, Joneca first argues that the district court applied an incorrect legal standard when determining that InSinkErator would likely suffer irreparable harm. The district court concluded that irreparable harm was likely because "irreparable injury to [InSinkErator's] goodwill" was "probab[le]." In doing so, the district court determined that InSinkErator was not entitled to a rebuttable presumption of irreparable harm, relying on *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). As the parties agree, this was error. After *eBay* was decided, Congress amended 15 U.S.C. § 1116(a) to provide "a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits." Trademark Modernization Act of 2020, Pub. L. No. 116-260, § 226, 134 Stat. 1182, 2208 (2020). InSinkErator was therefore entitled to a rebuttable presumption of irreparable harm.

That the district court failed to apply that presumption, however, does not require us to remand to the district court to assess irreparable harm under the proper standard. Because the district court concluded that InSinkErator demonstrated a likelihood of irreparable harm even without

applying the presumption in its favor, and because Joneca has failed to show that it was prejudiced by the error, the district court's error was harmless.[7] *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); *Shinseki v. Sanders*, 556 U.S. 396, 410–11 (2009) (noting that, in ordinary civil cases, the party seeking reversal bears the burden of showing an error was prejudicial).

Next, Joneca argues that "[t]he record cannot plausibly support a finding of irreparable harm." Joneca characterizes InSinkErator's evidence linking its lost contract and shelf space to Joneca's horsepower claims as conclusory, speculative, unsupported by facts "such as what was communicated to whom and when," and lacking in foundation. Joneca says that InSinkErator lost its contract with one retailer because of production issues related to the coronavirus pandemic, and that Joneca was allocated InSinkErator's shelf space at a second retailer "because the two retailers have the same parent company."

Even if Joneca's explanations were more detailed than InSinkErator's, Joneca has not shown that the district court was required to conclude that Joneca had contradicted InSinkErator's version of events. The district court could

---

[7] At oral argument, Joneca argued that the harmless error doctrine does not apply where the district court made a clear misstatement of law and relied on the misstated law, citing *In re Apple Inc. Device Performance Litigation*, 50 F.4th 769 (9th Cir. 2022). That decision, which considered a district court's erroneous "presumption of reasonableness and fairness" in approving a class action settlement, is inapposite. *Id.* at 782–83. The district court's analysis here provides a sufficient basis for its decision regardless of the presumption.

have credited both declarations, concluding that the first retailer initially used Joneca instead of InSinkErator due to InSinkErator's supply issues, as Joneca said, but that Joneca won the subsequent open bidding process with that first retailer and the shelf allocations with the second retailer because of what InSinkErator's witness called Joneca's "fake value proposition." Or the district court may have plausibly weighed the narratives and found Joneca's less believable despite its supporting details. Either way, Joneca has not shown clear error.

Joneca similarly argues that InSinkErator's claims that it was bidding on contracts were overly general and that the bid negotiations may not have involved discussions of Joneca's specific horsepower claims. Joneca fails to explain what level of detail was required to allow the district court to credit InSinkErator's account or why the district court was not permitted to infer from the competition between InSinkErator and Joneca, and the materiality of Joneca's horsepower claims to consumers, that Joneca's claims would bear on negotiations.

We find no error in the district court's findings on irreparable injury.

## C.

Joneca contends that the district court erred in balancing the hardships. The district court concluded that "InSinkErator will likely suffer some hardship without an injunction" and that Joneca's hardship could be limited by tailoring the injunction "to only prohibit false claims of horsepower," allowing Joneca "to explain during retailer bids and sales presentations that its products have a certain horsepower *input*." But the court found that "Joneca faces some potential harm to its business" from a preliminary

injunction "in addition to reputation harms and potential concerns arising from retailer contract bidding." Accordingly, the district court ordered InSinkErator to post a bond in the amount of $500,000.

Joneca argues that its horsepower claims are not causing any harm to InSinkErator but, by contrast, the injunction causes "significant" hardship to Joneca. For the latter point, Joneca principally argues that the costs of complying with the injunction far exceed the amount ordered by the district court as bond.

We have addressed the irreparable harm to InSinkErator above. As for the bond, district courts have "wide discretion in setting the amount of a security bond." *Walczak*, 198 F.3d at 733. The "amount . . . consider[ed] proper" by the district court, FED. R. CIV. P. 65(c), was lower than the amount for which Joneca asked and higher than the amount for which InSinkErator asked. Joneca has not adequately justified treating a disparity from its request, without more, as an abuse of the district court's discretion.

## D.

Joneca contests the district court's finding that an injunction was in the public interest. The district court stated that "the public has a strong interest in avoiding confusion caused by false claims of horsepower," noting that "the two products . . . are being sold side-by-side . . . and being distinguished by their claimed horsepower." Joneca argues once more that it "has not made any literally false horsepower claims." Because the district court did not clearly err in finding Joneca's claims literally false, we conclude that Joneca has not shown error in the district court's analysis of the public interest.

IV.

For the reasons stated above, the district court's order granting the preliminary injunction is **AFFIRMED**.